MARY SCHICHTL, Appellee, v. JOSEPH SCHICHTL, Appellant.

1. **Divorce**: INHUMAN TREATMENT: EVIDENCE. Where, in an action by the wife for a divorce, the evidence showed that the plaintiff had been peevish, quarrelsome and needlessly meddlesome in her husband's business and other affairs, and had thus provoked much of the abuse heaped upon her by her husband, *held*, that the plaintiff's conduct was no excuse for the husband repeatedly striking, kicking and otherwise abusing the plaintiff, and that the court did not err in granting her a divorce on the ground of inhuman treatment.

2. ———: ———: CUSTODY OF CHILDREN. It appearing that the plaintiff had more ability and disposition to provide for the comfort and education of the children than the defendant, *held*, that a decree awarding her the custody of the children, with certain privileges to the defendant, and requiring the defendant to pay a certain sum per month for their support, was proper.

*Appeal from Kossuth District Court.*—HON. GEORGE H. CARR, Judge.

WEDNESDAY, MAY 17, 1893.

ACTION for divorce. There was a decree for the plaintiff, and the defendant appeals.—*Affirmed.*

*Cliggit & Rule*, for appellant.

*George E. Clarke*, for appellee.

GRANGER, J.—I. This suit was commenced in January, 1889. The parties were married in April, 1877, and had five children, the oldest of which, at the commencement of this suit, was eleven, and the youngest two, years of age. About three years before the commencement of the action the plaintiff left the home of the defendant, taking with her the youngest child, the other children remaining with the defendant.

*1. Divorce: inhuman treatment: evidence.*

Some averments of the petition, on which the plaintiff seeks the divorce, are as follows: "Par. 4. That defendant has shamefully misused plaintiff by striking, kicking and maltreating, which treatment has very greatly injured plaintiff's health, and nearly cost her life, which has been endangered on two different occasions in the spring and summer of 1886." A further paragraph of the petition is as follows: "Par. 6. Defendant is shamefully abusing and misusing the children, by not properly feeding or clothing them, and by obscene language and conduct in their presence; and plaintiff is able and anxious to take care of properly and educate the children."

The prayer of the petition, besides a decree of divorce, asked for a temporary injunction restraining the defendant from attempting to prevent the plaintiff's taking the children, or molesting her in the care and control of them. The writ was allowed upon a bond being filed, and the children delivered into the custody of the plaintiff. A motion to dissolve the injunction was afterwards overruled. The answer puts in issue the averments of the petition as to the misconduct of the defendant, on which the prayer for relief is based, and presents a cross action for divorce on the grounds of desertion and inhuman treatment. The district court found the facts with the plaintiff, and a decree for divorce was entered, granting to her the custody of the children, with certain restrictions as to

her and privileges to the defendant, and gave to the plaintiff alimony for the support of the children at ten dollars per month.

It is unfortunate that this plaintiff and defendant should have become husband and wife. They are illy suited to the companionship of each other, and much of their domestic life of nearly ten years has been the reverse of what it should have been, and probably what was anticipated at its inception. This result is not the fault exclusively of either, but of both. The plaintiff has been peevish, quarrelsome and needlessly meddlesome in her husband's business and other affairs, and in a way to discourage, rather than encourage, prosperity or domestic happiness. The details of her course in this respect constitute the grounds of his complaint and claim for divorce in the cross bill, and they have, beyond question, been a strong provocation to many of the acts of which she complains, but they do not amount to a justification. The testimony in support of the cross petition, while, as we have said, it shows a strong provocation, comes far short of justifying, in his behalf, a legal separation. Our conclusion from the testimony accords with that of the district court, that the plaintiff should be decreed a divorce. This conclusion is based on his acts of personal violence towards her. The fact of personal violence is not in dispute. The character, extent and effect of the violence are matters to be determined from conflicting testimony. It is not important that we should review the whole course of his treatment of the plaintiff in this respect. We can not give a few facts more concisely than by quoting a part of the plaintiff's evidence as follows:

"Left him because that day he threatened to finish us all, entirely, and I was afraid of my life, and he was abusing me so shamefully, and had abused me before and after my children were born. Before the child was

born, he struck and kicked me; struck me about head and shoulders, kicked and cuffed me until I did try to get out of his way; and the way my health was, I was not able to walk as I ought to be able to. This was the fifth day of May, and he kicked and cuffed me to a step or two of barn, and back to a step or two of house, that evening; and he told his brother, who stood on corner of house, to watch that I did not get off the the place. Kicked me in side, for which I suffered more or less ever since. Hit me so many different places that I can't tell, but certain places that I could state, because other people have seen the marks. *Question.* Whereabouts did he kick you? On your limb? *Answer.* Think he struck me, that is, whether with his foot or part with his fist, could not swear, because he followed me right from the back, because I could not see where all the blows came from, because it was in the evening; and he kicked me so that I was bruised badly from head down around my limb and ankle, besides bruises that I had on my body and head. I think there were some of those marks left after my confinement. This was time my limb got blackened and he blacked my face. It was morning that I left that he struck me back of and around my ear, right back of and below ear, so blood dropped down and dried on before neighbors seen it. He made threats that if children told anyone what they seen he would serve them worse than me, and I sent my youngest child to Jains' to ask for one or two men to come, so I could get off the place alive. Mr. Jains and his son came, and said other men didn't want anything to do with it. I tried to walk, and got to Rod. Jains' potato patch, where his two daughters were digging potatoes; but I dropped before I got there, and second time I dropped they came and helped me to their house."

A Mrs. Haswell, who was present before and at the

confinement of the plaintiff, says she went there about a week before the confinement, and that the plaintiff could hardly help herself; that "she was bruised badly on her face and limbs; on side of face. These bruises appeared of recent date." She corroborates the plaintiff in her statements of acts of neglect during her sickness by confinement that are without any excuse or palliating circumstances. Other witnesses saw the plaintiff with her face bruised and blackened; and, upon the whole, the testimony satisfies us that her treatment at the hands of the defendant was inhuman and such as to endanger life, and for which she is entitled to the decree separating her from her marital relationship to him.

The story of her complaints is a long and sad one, for which she is not wholly faultless, but for which, as we have said, he is without legal justification. Much, from the record, might be added in support of our conclusion, but it is unnecessary. These acts by the defendant are a justification on her part in separating from him, which act is the ground of his claim for divorce on the ground of desertion.

II. To the children plaintiff was always kind, and she was always thoughtful for their comfort and education. They can be intrusted to her care without an apprehension of neglect or abuse, and with every reasonable assurance that an effort will be made for their suitable support. She is industrious and prudent in management. While the defendant may not be wanting in affection for his children, the testimony fails to show that he has the same ability or disposition to meet the situation and provide for their comfort and educational opportunities that the plaintiff has.

2. ——: ——: custody of children.

To our minds, the decree of the district court in each particular meets the demand of the case, and its judgment is AFFIRMED.

Mr. Justice KINNE took no part in this case.